[No. 17860-5-II.   Division Two.   August 10, 1995.]

THE STATE OF WASHINGTON, *Appellant*, v. GABRIEL F.
STEWART, *Respondent*.

*David G. Skeen, Prosecuting Attorney*, and *Walter H.
Perry, Deputy*, for appellant.

*Craddock D. Verser, Public Defender*, for respondent.


HOUGHTON, J. — The State appeals the trial court's dis-

missal of charges of delivery of a controlled substance, Lysergic Acid Diethylamide (LSD), due to violation of Gabriel F. Stewart's right to a speedy trial. The trial court concluded the speedy trial time began to run when Stewart was detained in Arizona. Because we find Stewart was not amenable to process at that time, we reverse.

Stewart was charged by information in Jefferson County Superior Court on October 27, 1992. The information stated his last known address as 218 Polk Street, #218, Port Townsend, Washington. The same day, the prosecutor submitted an "Affidavit of Probable Cause and for an Arrest Warrant," stating that Stewart was involved in an August 12, 1992, "controlled buy" and that Stewart's "present whereabouts [were] unknown." The warrant was issued the following day. Pursuant to standard procedure, the warrant was entered on the national teletype, stating Jefferson County would extradite only from within Washington, Idaho, Oregon, Montana, and the northern portion of California.

Stewart was away at school in Arizona from September 1992 until he returned to Washington in September 1993. During this time, he was on probation in Washington due to a prior offense. This required him to obtain permission from his Washington probation officer to attend an out-of-state school, give the probation officer his Arizona address, and maintain contact. He apparently complied.

When he applied for a part-time job in Arizona during May 1993, Stewart's prospective employer discovered the outstanding warrant and told him about it. Stewart telephoned his mother, who is an attorney in Port Townsend. She knew the prosecutor because of his prior prosecution of her son, and because Port Townsend is a relatively small community. At the subsequent dismissal hearing, she submitted an affidavit stating she was never notified in any way about the pending charge against her son. She did, however, contact the prosecutor's office in May 1993, and confirm the existence of the outstanding warrant for Stewart.

In late August 1993, Stewart was stopped by a police officer in Phoenix, Arizona, while attempting to cross a freeway on foot "to get to the other side." According to affidavits submitted by Stewart, the officer asked for his identification, took his Washington State driver's license, and ran a warrant check on it. Apparently discovering the outstanding warrant, the officer handcuffed Stewart and "said he was placing [Stewart] under arrest for a warrant." A few minutes later, however, police dispatch informed the officer no extradition would be sought to Washington, so the officer released Stewart.

After returning to Washington on September 26, 1993, Stewart notified the prosecutor's office of his presence, and he appeared through counsel in Jefferson County Superior Court two days later to quash the warrant. He objected to his October 8, 1993, scheduled arraignment date and subsequent trial date, contending they were in violation of his speedy trial right. Stewart was arraigned on October 8, 1993.

At an October 15, 1993, hearing, Stewart's counsel argued the State did not make a good faith effort to notify Stewart of the charge and to set an arraignment date. In response, the prosecutor noted Stewart "was not officially arrested," but merely detained in Arizona, and that Stewart therefore was not amenable to process at that time.

In an order issued October 19, 1993, the visiting trial judge concluded that out-of-state defendants are not amenable to process under Washington law and that the speedy trial time limits are tolled during such absences; nonetheless, the court concluded Stewart's brief Arizona detention for a traffic infraction began "the clock on speedy trial." The court therefore required "[t]he parties" to provide the "exact date of the Arizona arrest [*sic*] . . . in writing . . . [by] October 27, 1993," and held the ninety-day speedy trial time would begin to run from fourteen days after that date. The court also stated the "current trial date shall be reset if needed to conform to this time frame."

Neither the State nor Stewart was able to determine

the exact date of Stewart's detention. The State submitted an affidavit on November 10, 1993, noting that its teletype of the warrant did not provide for extradition from Arizona, that no one at the prosecutor's office ever received notice of Stewart's detention or a request for extradition, and that Arizona's determination to release Stewart was "not . . . based on a determination by Jefferson County at the time of that detention." Stewart submitted a declaration on December 17, 1993, asserting he was stopped some time between August 27 and September 1, 1993.

A second visiting judge dismissed the case against Stewart with prejudice, pursuant to CrR 3.3(i),[1] following a hearing on December 17, 1993. The court did so because "neither party complied with the court's [prior] opinion and order to set the trial herein based on the date defendant was arrested [sic] in Arizona." The second judge apparently determined the first judge "set the law of the case," such that both parties' failure to provide the date of Stewart's "arrest," together with their subsequent failure to set a trial date based upon that date, mandated dismissal. The State appeals.

Defendants not detained in jail or subject to conditions of release pending arraignment "shall be arraigned not later than 14 days after that appearance in superior court which next follows the filing of the information or indictment." CrR 3.3(c)(1); *State v. Greenwood*, 120 Wn.2d 585, 589, 845 P.2d 971 (1993). But this rule does not address long delays prior to their first appearance. *Greenwood*, 120 Wn.2d at 589-90. Rather, the Supreme Court has determined that "if the . . . information is filed before arrest, the accused will be promptly brought before the court *if he is amenable to process*." (Emphasis ours.) *State v. Striker*, 87 Wn.2d

---

[1]CrR 3.3(i) provides: "A criminal charge not brought to trial within the time period provided by this rule shall be dismissed with prejudice."

870, 877, 557 P.2d 847 (1976).[2] This promptness rule incorporates a prosecutorial duty of good faith and due diligence in bringing defendants to trial. *See State v. Anderson*, 121 Wn.2d 852, 858, 855 P.2d 671 (1993). Failure to comply with this duty will result in dismissal with prejudice. CrR 3.3(i).

The *Striker* promptness rule has been invoked with delays as short as forty-five days. *See, e.g., State v. Carpenter*, 94 Wn.2d 690, 694, 619 P.2d 697 (1980). In the present case, the delay from filing to Stewart's first appearance was 345 days. We therefore must determine whether the *Striker* rule applies.

■ The State contends the *Striker* rule does not apply because Stewart was not amenable to process during his absence from Washington. This court has previously so held under similar circumstances. In *State v. Lee*, 48 Wn. App. 322, 325, 738 P.2d 1081 (1987), we determined the defendant was not amenable to process (i.e., not subject to the law of this state) during his absences from the State, so the *Striker* rule did not apply. *See also Carpenter*, 94 Wn.2d at 693 (amenable to process means liable or subject to law); *State v. Hunnel*, 52 Wn. App. 380, 384, 760 P.2d 947 (1988) (applying *Lee*). This was true in *Lee* despite the prosecutor's knowledge of the defendant's whereabouts in Oregon, and despite Washington's ability to extradite the defendant from Oregon. 48 Wn. App. at 324. Under *Lee*, Stewart was not amenable to process, and the *Striker* rule does not apply.[3]

Although the first trial judge recognized the *Lee* excep-

---

[2]*Striker* was decided prior to the 1980 amendments to CrR 3.3, but has been held to apply to the amended rule. *See Greenwood*, 120 Wn.2d 585.

[3]Without benefit of citation to authority Stewart nonetheless asserts he was "clearly" amenable to process in Jefferson County on the delivery charge because he was on probation in Washington while he was in Arizona. Although acknowledging the State's argument that a probation officer's knowledge cannot be imputed to the prosecutor's office, Stewart nonetheless contends knowledge was necessarily obtainable via compliance with former CrR 2.1(f), which required the prosecutor to request a copy of the defendant's criminal history when filing an information. Presumably Stewart means to imply the prosecutor could have discovered Stewart was on probation, and then inquired regarding his where-

tion to the *Striker* rule properly applied in this case, it nonetheless concluded Stewart's "arrest" in Arizona triggered the prosecutor's duty under *Striker* to exercise good faith and due diligence in obtaining Stewart's presence for trial. For this, the trial court apparently relied upon *Anderson*, 121 Wn.2d 852, which concerned a federal prisoner's repeated attempts to obtain a speedy trial in Washington. Stewart also relies upon *Anderson* here.

*Anderson* is legally and factually distinguishable. That case involved CrR 3.3(g)(6), which tolls speedy trial time when defendants are incarcerated in another state or a federal prison. The court held this rule incorporates the prosecutorial duty of good faith and due diligence in obtaining defendants' presence for trial in a timely manner; because Anderson was denied a speedy trial due to Washington's failure to exercise due diligence, the rule was violated. *Anderson*, 121 Wn.2d at 865.

The *Anderson* court based its holding both on the defendant's attempts to obtain a speedy trial, and on the existence of the Interstate Agreement on Detainers, RCW 9.100 (IAD). The IAD allows Washington to request that another signatory jurisdiction continue its custody of an individual against whom Washington has pending charges, until those charges are resolved; that individual may then demand a Washington trial through the responsible penal authority of the other jurisdiction; the trial must be commenced within 180 days of such a demand. *Anderson*, 121 Wn.2d at 861 (citing RCW 9.100.010).

■ CrR 3.3(g)(6) does not apply in the present case. Stewart was not incarcerated in another jurisdiction, but away at school. He was not detained in jail or prison, but was merely stopped by the roadside for a minor infraction. He made no attempt to request extradition from Arizona

abouts. The official comment to CrR 2.1(e) notes, however, that the purpose of the rule "is to ensure that [such] . . . criminal history is available when and if the court is required to determine the validity of a plea agreement," not to provide notice or knowledge to the prosecutor of possible probation. Moreover, *Lee* holds that out-of-state defendants are not amenable to process for purposes of *Striker* even if the prosecutor knows their whereabouts.

or otherwise to invoke his speedy trial right until after he returned to Washington, approximately four months after he learned about the outstanding warrant. *Anderson* is inapposite.

Nor does Stewart's brief detention in Arizona one month before he returned to Washington require application of *Anderson*. Nothing in *Anderson* implies the prosecutor fails to exercise good faith or due diligence by limiting the interstate scope of arrest warrants. *Anderson* does not apply in these circumstances.

The first trial judge's determination that speedy trial time should begin to run from the time of Stewart's "arrest" was thus both factually and legally incorrect. The second judge's reliance upon that determination was therefore incorrect. We see no basis for a rule that would require the State to issue unlimited arrest warrants and to extradite in all circumstances, no matter how trivial, for fear of triggering speedy trial time, even though the absent defendant has knowledge of an outstanding warrant and has made no effort to invoke his speedy trial rights.

Because *Lee* controls and *Striker* does not apply, Stewart was properly arraigned within fourteen days of his first appearance on October 3, 1993. The State then had 90 days, until January 6, 1994, to bring him to trial. CrR 3.3(c)(1). The trial court, however, erroneously dismissed the charge with prejudice on December 17, 1993, preventing the State from trying Stewart within ninety days. We therefore reverse, and remand for trial.

SEINFELD, C.J., and FLEISHER, J., concur.

Review granted at 128 Wn.2d 1018 (1996).