922 P.2d 1356 (1996)
130 Wash.2d 351
The STATE of Washington, Respondent,
v.
Gabriel F. STEWART, Petitioner.
No. 63330-4.
Supreme Court of Washington, En Banc.
Argued May 29, 1996.
Decided September 26, 1996.
*1357 Craddock D. Verser, Port Townsend, for Petitioner.
David Skeen, Jefferson County Prosecutor, Walter H. Perry, Deputy, Port Townsend, for Respondent.
SMITH, Justice.
Petitioner Gabriel F. Stewart petitions for review of a decision of the Court of Appeals, Division Two, reversing a Jefferson County Superior Court decision which dismissed a charge against him of delivery of a controlled substance, lysergic acid diethylamide (LSD), because of violation of his speedy trial right under CrR 3.3. We granted review. We affirm the Court of Appeals.

QUESTION PRESENTED
This case presents the question whether Petitioner Stewart's right to a speedy trial under CrR 3.3 was violated when the State, after learning he was in Arizona in August 1993, did not extradite him for arraignment and trial for a felony charge filed in the Jefferson County Superior Court on October 27, 1992 and did not comply with an October 19, 1993 order to set a new trial date within 104 days of Petitioner's arrest and brief detainer in Arizona.

STATEMENT OF FACTS
Petitioner Gabriel F. Stewart left Port Townsend, Washington on September 14, 1992 to attend school in Arizona. He was then on probation with the Jefferson County District Court for a 1990 charge of driving while under the influence of alcohol and was supervised by a probation officer, Ms. Barbara Carr. She gave him permission to leave the state to attend school. After Petitioner went to Arizona, he communicated with Ms. Carr by letter and telephone until his release from probation in June 1993.
On October 27, 1992 the Jefferson County Prosecuting Attorney charged Petitioner by information with the felony of delivery of a controlled substance, lysergic acid diethylamide (LSD).[1] The information listed Petitioner's last known address as "218 Polk Street, # 218, Port Townsend, WA 98368,"[2] a post office box in the name of Petitioner's mother, Ms. Joan Best. Petitioner received most of his mail at that address when he lived in Port Townsend. On October 27, 1992 the State also filed an affidavit of probable *1358 cause and for arrest warrant, stating Petitioner's whereabouts were unknown.[3] A warrant for Petitioner's arrest was issued on October 28, 1992. Following standard procedure, the State put the warrant on the national teletype, noting it would only extradite Petitioner from Idaho, Oregon, Montana and the northern part of California.[4]
Petitioner was in Arizona from September 1992 until September 1993.[5] He applied for a job in Arizona in May of 1993. The prospective employer, after running a records check on Petitioner, told him of the outstanding warrant in Jefferson County. Petitioner claims that was the first time he learned about the warrant. He telephoned his mother, an attorney in Port Townsend, and asked her to look into the matter. She telephoned the Jefferson County Prosecuting Attorney's Office and a clerk read Petitioner's charge to her. His mother told Petitioner about the charge several days later. He did nothing about it.
In late August of 1993 a police officer in Arizona stopped Petitioner for illegally crossing a freeway on foot. Petitioner gave him his Washington driver's license as identification. The officer ran a license check which revealed the Jefferson County warrant for Petitioner's arrest. Petitioner states in his declaration the officer then came over to him and "said he was placing [Petitioner] under arrest for a warrant."[6] The officer handcuffed him and momentarily placed him in the patrol car. Police dispatch told the officer Washington would not extradite Petitioner. The officer then released him at the scene.
Petitioner returned to Port Townsend, Washington on September 26, 1993. Through his attorney he informed the Prosecuting Attorney of his presence. He appeared in the Jefferson County Superior Court on September 28, 1993 and moved to quash the warrant. The Court denied the motion. Over Petitioner's objection, arraignment was set for October 8, 1993 and the trial date was set for December 27, 1993.[7]
On October 8, 1993 Petitioner appeared for arraignment and pleaded "not guilty." He also filed a motion to dismiss, claiming the State did not exercise due diligence in advising him of his charge or in securing his presence for arraignment and trial within the time limits under CrR 3.3.[8] Petitioner pointed out he was on active probation with the Jefferson County District Court when he was charged; and the State knew or should have known he was in Arizona.
Submitted with Petitioner's motion to dismiss was a declaration by his mother, Ms. Joan Best. She stated Port Townsend is a small town of about 7,000 residents. She asserted she knew all the attorneys in the Jefferson County Prosecuting Attorney's office and they all knew her. She also believed the prosecutor in this case, John Adcock,[9] knew Petitioner was her son. She also knew the Jefferson County Sheriff and many of his deputies. She said no one from those offices ever contacted her about her son's charges or asked her concerning his whereabouts. She stated she received much of Petitioner's mail while he was in Arizona and did not recall getting mail for him from the Sheriff or from the Prosecuting Attorney.
Petitioner's mother also described her son's August 1993 detention in Arizona. Responding to Petitioner's motion, the State said it found out in November 1992 from Petitioner's friends that he was attending school in Arizona. The State asserted it declined to extradite Petitioner after he was detained in Arizona in August of 1993 because of the costs involved. On October 15, 1993 a hearing on Petitioner's motion was *1359 held in the Jefferson County Superior Court before the Honorable George L. Wood.
In a memorandum opinion and order the court on October 19, 1993 denied Petitioner's motion to dismiss. But the court, relying on State v. Anderson, 121 Wash.2d 852, 855 P.2d 671 (1993), concluded the State's decision not to extradite Petitioner when he was detained in Arizona constituted a lack of due diligence in obtaining his presence before the Jefferson County Superior Court.[10] The court concluded "[t]he State's failure to pursue extradition at that point begins the clock on speedy trial."[11] A trial date had previously been set for December 27, 1993. The court directed the parties to submit in writing, not later than October 27, 1993, the exact date of Petitioner's arrest in Arizona. The court then ordered that the trial be set within 104 days of the date of arrest and the December 27, 1993 trial date be reset, if necessary, to conform with that time frame.[12] The parties were directed to appear on November 12, 1993 for setting of a new trial date.[13]
Neither party submitted to the court the date of Petitioner's arrest in Arizona by October 27, 1993. On November 10, 1993, Petitioner forwarded a declaration to the court, stating he had been detained by the police officer in Arizona some time between August 27, 1993 and September 1, 1993.[14]
No new trial date was set on November 12, 1993. Apparently counsel for both parties were at the courthouse that day, but the matter was not on the calendar. On December 17, 1993 the Honorable James I. Maddock presided over a pre-trial hearing and considered a continuance of the trial. Petitioner's counsel argued the case should be dismissed because of violation of the speedy trial rule. In explaining why a trial date was not set on November 12, he said, "I don't know why we didn't ... and now it's too late to set one within the time required...."[15] The court dismissed the case with prejudice under CrR 3.3(i) because it was not set for trial within 104 days of the date of Petitioner's arrest in Arizona, as required by the October 19, 1993 memorandum opinion and order. The State appealed to the Court of Appeals, Division Two, on January 6, 1994.
On August 10, 1995, the Court of Appeals, Division Two, reversed and remanded for trial.[16] Relying primarily on State v. Lee, 48 Wash.App. 322, 738 P.2d 1081 (1987), the court stated Petitioner was properly arraigned on October 8, 1993, within 14 days of his initial appearance before the court on September 28, 1993. By making that statement the court effectively concluded the CrR 3.3 time for trial and arraignment did not start running until Petitioner's initial appearance on September 28, 1993. The court also distinguished Anderson from this case, declaring "factually and legally incorrect" the first trial judge's conclusion that the CrR 3.3 trial and arraignment time ran from the date of Petitioner's Arizona arrest; and that the second judge thus erroneously relied upon that conclusion in dismissing the case because it was not tried within that time period. This Court granted review on February 15, 1996.

*1360 DISCUSSION

SUPERIOR COURT CRIMINAL RULE 3.3 (CrR 3.3)
Superior Court Criminal Rule 3.3 (CrR 3.3), the "speedy trial" rule, prescribes times for trial and arraignment. For cases initiated in the superior court when an information is filed, a defendant who is not in jail or subject to conditions of release must be arraigned within 14 days after the first appearance in superior court which follows filing of the information.[17] A defendant must be brought to trial within 90 days after arraignment if the defendant remains out of custody pending trial.[18] When a defendant is not brought to trial within CrR 3.3 time periods, that defendant's criminal charges "shall be dismissed with prejudice" upon timely objection.[19]
In this case, an information was filed against Petitioner in the Jefferson County Superior Court on October 27, 1992. He was not jailed or subject to conditions of release when the information was filed, but remained at liberty pending trial. He appeared in court on September 28, 1993 and was arraigned within 14 days, on October 8, 1993, in accord with CrR 3.3. Trial was set for December 27, 1993within 90 days of the October 8, 1993 arraignment. There were no delays between Petitioner's appearance in court and his arraignment date. But the record shows a 335-day delay between the date the information was filed on October 27, 1992 and the date Petitioner first appeared in court on September 28, 1993.

CrR 3.3 AND STATE V. STRIKER
This Court in State v. Striker[20] held that where the defendant is amenable to process and there is a long delay between filing of the information and the defendant's first appearance before the court "through no fault or connivance" by the defendant, the speedy trial period in CrR 3.3 commences on the date the information is filed, and not when the defendant first appears to answer the charge. The Court observed the rules did not authorize delay between filing of an information or indictment and arrest or summoning of a defendant who is amenable to process. This Court reversed the trial court and dismissed the cases with prejudice because of violation of the "speedy trial" rule under CrR 3.3 which required that criminal charges "shall be brought to trial within 90 days following the preliminary appearance."
In State v. Greenwood[21] this Court held the Striker rule continues to supplement CrR 3.3. But the current CrR 3.3, unlike the version in effect when Striker was decided, provides that the defendant shall be arraigned not later than 14 days after the defendant's first appearance in superior court. This Court concluded Striker established under CrR 3.3 a constructive arraignment date of 14 days after the information is filed, with calculation for time of trial beginning on that constructive arraignment date. Thus, where a defendant is amenable to process and there is a long delay between filing of the information and a defendant's initial appearance in court, through no fault or connivance of the defendant, the CrR 3.3 speedy trial period starts to run from the 14-day constructive arraignment date and not from the date of the defendant's initial appearance.[22]

Application of State v. Striker

Under State v. Carpenter, four questions must be answered to determine whether Striker applies in this case: (1) whether Petitioner was amenable to process; (2) whether the delay was sufficient to come under Striker; (3) whether Petitioner connived to cause the delay; and (4) whether Petitioner was at fault in causing the delay.[23]
As to the second question, this Court has held a 45-day delay is sufficient to bring *1361 a case under Striker.[24] Thus the delay of 335 days in this case is more than sufficient to initially invoke the Striker rule. As to the third and fourth questions, the record does not show any connivance or fault by Petitioner in causing the delay. Petitioner may arguably be at fault for partially causing the delay when he first learned about the warrant for his arrest in May 1993 and chose not to appear before the court until September 28, 1993. But that issue is not before us.
The first question, whether Petitioner was amenable to process, is a critical one. Petitioner also raises issues concerning the obligation of good faith and due diligence by the State in bringing him before the court. We address both issues, as contemplated under Striker.

Amenability to Process
Was Petitioner amenable to process while he was in Arizona? "Amenable to process" means being liable or subject to law.[25] If a defendant is not amenable to process, Striker does not apply.[26]
The Court of Appeals in this case relied on State v. Lee[27] to conclude Petitioner was not amenable to process when he was outside the state. In Lee, the Court of Appeals, Division Two, concluded an out-of-state defendant was not amenable to process, even though the State knew his address in Oregon. The State made no attempt to serve a warrant on the defendant at his Oregon address. The court noted that "[o]ne is not amenable to process when, even if he can be found, he is not subject to the law because the courts cannot obtain jurisdiction over him."[28] And even though another state may effect a Washington warrant through the Uniform Criminal Extradition Act, RCW 10.88 et seq, "Washington has no `power' over the out-of-state defendant until extradition procedures are completed."[29] We agree with that conclusion.
The record shows Petitioner was in Arizona from October 27, 1992, when the information was filed in Jefferson County, until September 26, 1993, two days before he appeared in the Jefferson County Superior Court. About a month after the information was filed the State learned in November 1992 from Petitioner's friends that he was attending school in Arizona. But the State made no attempt to bring him before the court or to obtain more information concerning his whereabouts. Petitioner was still on probation while he was in Arizona and the State conceivably could have located him through his probation officer, or even through his mother. Petitioner claims he did not learn about the charges filed against him until May 1993. The State chose not to extradite him when notified of his brief detention in Arizona in August 1993.
Whether the State had an obligation to act on the information it received or should have obtained about Petitioner is a separate issue which is not part of the amenability to process question. The reality is that Petitioner was in Arizona between October 27, 1992 and September 26, 1993 and not subject to the laws of Washington during that period.
The Court of Appeals correctly concluded Petitioner was not amenable to process while he was in Arizona and that the Striker rule does not apply. Thus, the time for arraignment and trial in this case did not begin to run until Petitioner appeared in the Jefferson County Superior Court on September 28, 1993. He was arraigned on October 8, 1993, within 14 days of his appearance, and trial was set for December 27, 1993, within 90 days of his arraignment, all in compliance with CrR 3.3.
By not asserting he was amenable to process while in Arizona, Petitioner actually concedes the Court of Appeals was correct. But he nevertheless argues the Court of Appeals erred in concluding that Lee does not require *1362 the State to use due diligence in bringing out-of-state defendants before the court. Petitioner's argument is unsound. The Court of Appeals relied on Lee merely to conclude Striker did not apply because Petitioner was not amenable to process.[30]Lee does not address whether the State is required to use due diligence in bringing before the court in this state a defendant who is outside the State of Washington.

Good Faith and Due Diligence
Petitioner contends Striker applies because the State did not exercise good faith and due diligence in bringing him before the court. He claims the State must exercise good faith and due diligence to bring any defendant before the court, which would include defendants who are not amenable to process. This argument is not sound.
The Striker rule does not apply to delays between filing an information and a defendant's first appearance where the State exercises good faith and due diligence in bringing a defendant amenable to process before the court for a first appearance.[31] In Greenwood, this Court noted that the good faith and due diligence exception to Striker arose from cases interpreting a former version of CrR 3.3(f) under which periods of delay when a defendant was "absent and thereby unavailable for trial" were excluded from the trial period calculations.[32] Under those cases, a defendant was considered absent and unavailable for trial only if the prosecution exercised good faith and due diligence in efforts to bring the defendant before the court.[33] The Court reasoned in Greenwood that "[t]he good faith and due diligence standard is consistent with the purpose behind Striker, CrR 3.3 and the criminal rules as a whole. The standard ensures a defendant who is amenable to process will be brought before the court in a timely manner to answer for the charge."[34]
From Greenwood we conclude the good faith and due diligence exception to Striker applies only in cases where a defendant is amenable to process. And whether the State exercises good faith and due diligence in bringing before the court a defendant who is not amenable to process is irrelevant to application of the Striker rule. In declaring the Striker rule, this Court observed that "the rules contemplate that if the indictment or information is filed before arrest, the accused will be promptly brought before the court if [the accused] is amenable to process."[35]
In State v. Anderson[36] this Court held the State is required to act in good faith and with due diligence to bring a defendant to trial in this state after learning the defendant is detained in a federal prison or jail or a prison or jail outside the state. Petitioner relies on Anderson in arguing the State should have exercised due diligence in bringing him before the court while he was in Arizona and that the decision of the Court of Appeals thus is in conflict with Anderson. To the contrary. The Court of Appeals concluded Anderson was factually and legally distinguishable from this case. We agree.
In Anderson, the defendant was detained in a federal prison. He unsuccessfully tried several times to obtain a speedy trial on a charge filed against him in Washington by sending his demands to the State. The State did not respond. This Court held CrR 3.3(g)(6), which tolls the time for trial period when a defendant is in an out-of-state or federal prison or jail, imposes a duty of good faith and due diligence upon the State to bring such defendants to trial after learning they are in custody. The good faith and due *1363 diligence obligation also requires the State to bring those defendants to trial in this State through extradition or the interstate compact. Washington is a party to the Interstate Agreement on Detainers (IAD), RCW 9.100, which allows it to file a detainer asking another signatory jurisdiction to hold a defendant, against whom Washington has pending charges, until those charges are resolved. The defendant may then through proper prison authorities demand a Washington trial and is entitled to trial within 180 days of that demand.[37] However, the State did not utilize the IAD by filing a detainer and this Court held the defendant's speedy trial rights under CrR 3.3 were violated because the State did not exercise due diligence.
Petitioner Stewart was not in prison, but was attending school in Arizona. The Court in Anderson held the State had a duty of good faith and due diligence under CrR 3.3(g)(6), and not under the Striker rule, because the defendant in that case was detained in a federal prison. But CrR 3.3(g)(6) is not applicable in this case. Petitioner Stewart was not prevented from exercising his speedy trial rights during his brief and momentary detainer in Arizona.
The Court of Appeals therefore correctly concluded Anderson is distinguishable from this case. Thus the October 19, 1993 order from the trial court determining Petitioner's speedy trial time started running from the date of his arrest in Arizona, based upon Anderson, was in error and reliance upon that order in dismissing the case on December 17, 1993 was also in error.
The policy behind the Court of Appeals holding in this case is reasonable and sound. Requiring the State to act with due diligence and good faith to extradite a defendant in all circumstances under the speedy trial rule is impractical and unreasonable. This is manifestly so where an absent defendant like Petitioner is in another state, is not in custody, knows of an outstanding warrant against him in this state, and makes no effort to invoke his speedy trial rights.
Petitioner was properly arraigned in the Jefferson County Superior Court on October 8, 1993, within 14 days after his first appearance on September 28, 1993. The State had 90 days from the date of arraignment to bring him to trial. Trial was set within 90 days for December 27, 1993, but the case did not proceed to trial because the trial court dismissed the charge with prejudice on December 17, 1993. The Court of Appeals correctly determined the decision to dismiss should be reversed and the case remanded for trial.

NONCOMPLIANCE WITH COURT ORDER
Petitioner argues that dismissal was appropriate because the State did not comply with the October 19, 1993 order to set the trial date within a given time and determine the exact date of his Arizona arrest.[38] Petitioner did not fully comply with the order, although it applied to him as well. However, the Court of Appeals properly determined the order was in error. Whether the State had an obligation to obey that order is not determinative in this case. The speedy trial issue is controlling.
Petitioner also claims the State should have appealed the October 19, 1993 order if the State disagreed with it.[39] That order was not appealable.[40] Petitioner's argument is without merit.

SUMMARY AND CONCLUSIONS
CrR 3.3 governs time for trial and arraignment. Under the rule, defendants like Petitioner, who are not in jail or subjected to conditions of release, must be arraigned within 14 days after their initial appearance in court to answer the charges filed. Trial must then take place within 90 days after arraignment. Upon timely motion by a defendant, a trial will be dismissed for noncompliance with the "speedy trial" rule.
*1364 State v. Striker[41] supplements the "speedy trial" rule. Where a defendant is amenable to process and there is a long delay between filing of the information and the defendant's first appearance, through no fault or connivance by the defendant, the time for trial starts to run 14 days after the information is filed. Noncompliance with Striker also will result in dismissal of charges upon timely motion by the defendant.
Relying on State v. Lee,[42] the Court of Appeals correctly concluded Striker did not apply in this case because Petitioner was not amenable to process when he was in Arizona. Since Petitioner was not amenable to process, the State was not obligated to exercise good faith and due diligence in bringing him to trial.
Under CrR 3.3, Petitioner was promptly arraigned in the Jefferson County Superior Court on October 8, 1993, within 14 days of his appearance on September 28, 1993, which was 335 days after the information was filed. Trial was set for December 27, 1993, within the speedy trial period of 90 days from arraignment. The Court of Appeals correctly concluded the trial court was in error in dismissing Petitioner's charge based upon violation of his speedy trial rights under CrR 3.3.
We affirm the Court of Appeals, Division Two, which reversed and remanded the decision of the Jefferson County Superior Court which dismissed the charge of delivery of a controlled substance, lysergic acid diethylamide (LSD), against Petitioner Gabriel F. Stewart because of violation of his speedy trial right under CrR 3.3.
DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] See RCW 69.50.401(a). Clerk's Papers at 1.
[2] Clerk's Papers at 1.
[3] Clerk's Papers at 3.
[4] Clerk's Papers at 33.
[5] Petitioner attended school in Arizona from November 1992 until May 1993.
[6] Clerk's Papers at 26.
[7] The trial date does not appear in the record, but is acknowledged without question by the parties.
[8] Clerk's Papers at 4.
[9] John Adcock signed the information and the affidavit for probable cause and for arrest warrant.
[10] Clerk's Papers at 30.
[11] Id.
[12] Clerk's Papers at 30-31.
[13] Verbatim Report of Proceedings at 20.
[14] Verbatim Report of Proceedings at 21. In an affidavit filed on November 10, 1993 the State explained that, under standard procedure, when a defendant is detained on a Jefferson County warrant in a state included in the extradition notation, that state notifies the Jefferson County Sheriff's Office and asks whether the county would extradite the defendant. The sheriff's office then contacts the Jefferson County Prosecuting Attorney's Office. However, Arizona was not included in the extradition notation in this case. In the affidavit, the State claims it was not contacted about extraditing Petitioner from Arizona in August 1993 or any other month; and that if Petitioner was detained, his release was not based upon its decision, but upon information in the national teletype and the warrant. Clerk's Papers at 33-34. These statements contradict the State's earlier response to Petitioner's motion to dismiss which stated it did decline to extradite Petitioner because of extradition costs. Id. at 15. The State indicated it was unable to verify the facts before filing its response and therefore based its statement about Petitioner's Arizona detention solely upon information in [Ms. Best's] declaration. Id. at 32.
[15] Verbatim Report of Proceedings at 27.
[16] State v. Stewart, 78 Wash.App. 931, 899 P.2d 1283 (1995).
[17] CrR 3.3(c)(1).
[18] Id.
[19] CrR 3.3(f); CrR 3.3(i).
[20] 87 Wash.2d 870, 877, 557 P.2d 847 (1976).
[21] 120 Wash.2d 585, 601, 845 P.2d 971 (1993).
[22] Id. at 599, 845 P.2d 971.
[23] State v. Carpenter, 94 Wash.2d 690, 693-94, 619 P.2d 697 (1980).
[24] Id. at 694, 619 P.2d 697.
[25] Id. at 693, 619 P.2d 697.
[26] See Striker, 87 Wash.2d at 871, 877, 557 P.2d 847; Greenwood, 120 Wash.2d at 594, 845 P.2d 971.
[27] 48 Wash.App. 322, 738 P.2d 1081 (1987).
[28] Id. at 325, 738 P.2d 1081 (citation omitted).
[29] Id.
[30] Stewart, 78 Wash.App. at 935, 899 P.2d 1283.
[31] E.g., Greenwood, 120 Wash.2d at 601, 845 P.2d 971.
[32] Id. at 601, 845 P.2d 971 (quoting former CrR 3.3(f) (1976)).
[33] State v. Peterson, 90 Wash.2d 423, 585 P.2d 66 (1978); State v. Williams, 87 Wash.2d 916, 557 P.2d 1311 (1976).
[34] Greenwood, 120 Wash.2d at 601, 845 P.2d 971 (emphasis added).
[35] Striker, 87 Wash.2d at 877, 557 P.2d 847 (emphasis added).
[36] 121 Wash.2d 852, 864, 855 P.2d 671 (1993).
[37] Id. at 861, 855 P.2d 671 (citing RCW 9.100.010).
[38] The Court of Appeals did not address this issue.
[39] The Court of Appeals did not address this issue.
[40] See RAP 2.2(b)(1).
[41] Supra.
[42] Supra.