972 P.2d 511 (1999)
94 Wash.App. 211
STATE of Washington, Appellant,
v.
Thomas Jacob ROMAN, Respondent.
No. 20853-9-II.
Court of Appeals of Washington, Division 2.
February 26, 1999.
Reconsideration Denied March 29, 1999.
As Amended April 23, 1999.
*512 Lisa E. Tabbut, Cowlitz Co Pros Ofc, Kelso, for Appellant.
Robert W. Huffhines Jr., Kelso, for Respondent.
MORGAN, J.
The State of Washington appeals the trial court's dismissal of charges for violation of CrR 3.3, the speedy trial rule. We reverse and remand.
On April 20, 1995, the prosecutor in Cowlitz County charged Roman with first degree kidnapping, first degree extortion, and fourth degree assault. On April 26, 1995, the Cowlitz County Superior Court issued a warrant for Roman's arrest.
On or about May 1, 1995, police in Stanislaus County, California, jailed Roman on a misdemeanor forgery committed in that county. They notified Cowlitz County that they had Roman in custody, and Cowlitz County forwarded its warrant.
On May 4, 1995, the Stanislaus County District Attorney filed a fugitive complaint based on Cowlitz County's warrant. Roman appeared before the Stanislaus County Municipal Court and declined to waive extradition. The court scheduled an identification hearing for May 12, and Stanislaus County immediately asked Cowlitz County to send the necessary documents. According to the trial court's later finding, however, Cowlitz County did not mail the documents until May 12.
On May 12, the identification hearing was held. Apparently because Stanislaus County had not yet received the necessary documents from Cowlitz County, the Stanislaus County Municipal Court "temporarily dismissed" the fugitive complaint.[1] The court did not release Roman, however, for he was still being held on Stanislaus County's forgery charge.
On June 26, 1995, Roman was convicted on Stanislaus County's forgery charge. Thereafter, he was sentenced to the Stanislaus County jail for a term expiring on November 27, 1995.
On May 15, meanwhile, the Cowlitz County prosecutor asked Washington's governor to apply for Roman's extradition. On June 1, Washington's governor forwarded the necessary paperwork to California's governor. On a date not shown by the record, California's governor issued an extradition warrant, which he forwarded to Stanislaus County.
The record does not show when the extradition warrant reached Stanislaus County. It was before September 1, however, for on September 1 Stanislaus County teletyped Cowlitz County that it "still" had the warrant.[2] In the same teletype, Stanislaus County *513 stated that Roman would complete his Stanislaus County sentence on November 27, 1995, and that it would "advise on [pick-up] after that."[3]
On November 27, 1995, the Stanislaus County jail released Roman by mistake. The next day, it teletyped Cowlitz County as follows:
This is an official teletype notice informing you that the Stanislaus County Jail, where Roman has been housed on local charges and with your fugitive hold, has released him from custody in error. What I was told was a mix up in his paperwork when we originolly [sic] placed the hold then dropped it to prosicute [sic] on our local charges. I replaced the hold but some[]how it got missread [sic] as dropped[.] I spent the day checking all the address[es] I thought he might be at with neg. results. Please reenter him into the system and I[']m sure he will turn up. He is a local person with family and lots of friends here. If possible we will hold this governor[']s warrant for as long as possible....[[4]]
Roman's whereabouts were unknown for most of the next two months. On January 19, 1996, however, he was arrested in Idaho. On January 29, 1996, he waived extradition and agreed to return to Cowlitz County. In early February, 1996, he made his first appearance in Cowlitz County. On March 7, 1996, he waived any speedy trial violation that had not already accrued.
On May 10, 1996, Roman asked the Cowlitz County Superior Court to dismiss the case because he had not received a speedy trial under CrR 3.3. He claimed that the 60/90 time for trial included the time he had spent in the Stanislaus County jail, and thus that the 60/90 time for trial had long since expired.[5] The trial court granted his motion, and the State filed this appeal.
The sole issue on appeal is whether the trial court properly counted Roman's time in the Stanislaus County jail (May 1, 1995 to November 27, 1995) as part of the time for trial under CrR 3.3. As far as we can tell from the record, the trial court did not count the time he was at large after being released, and Roman waived any delay that occurred after his return to Cowlitz County.
When a defendant is charged before his or her first appearance, the plain terms of CrR 3.3 require arraignment within 14 days of first appearance, and trial within 60/90 days of arraignment.[6] Moreover, the plain terms of CrR 3.3(g)(6) provide that "[t]he time during which a defendant is detained in jail or prison outside the state of Washington" is to be excluded when computing the time for arraignment or trial.
Relying on State v. Striker,[7]State v. Greenwood[8] held that when a defendant is present in this state, but there is "a long and unnecessary delay" between the filing of charges and the defendant's first appearance in court, first appearance will be backdated to the fourteenth day after filing, and trial must commence within 60/90 days after that.[9] A delay may be "long" if it lasts 45 days or more.[10] A delay is "unnecessary" if, while it was occurring, the defendant was amenable to process[11] and the State failed to exercise *514 due diligence to bring him or her before the court.[12] The defendant should have the burden of proving amenability, for he or she knows what he or she was doing during the relevant period; the State should have the burden of proving due diligence, for it knows what it was doing during the relevant period.
State v. Anderson[13] extended Greenwood to some but not all out-of-state defendants. Implicitly, Anderson held that a defendant is amenable to process when he or she is incarcerated in an out-of-state or federal jail or prison; the prosecutor is aware of that; and the defendant is actively demanding a speedy trial.[14] Explicitly, Anderson held that the State fails to exercise due diligence if, under the circumstances just described, it ignores the defendant's demand.[15]Anderson also held that these requirements inhere in CrR 3.3(g)(6).[16]
State v. Hudson[17] and State v. Stewart[18] partially clarified Anderson by holding that a defendant is not amenable to process while at large in another state. In that situation, then, the State is not required to exercise due diligence.
To apply these principles here, we address two questions. (1) Was Roman amenable to process while in the Stanislaus County jail? (2) If so, did the State exercise due diligence to bring him back? In addressing the first question, we separately discuss (a) whether Roman was amenable to process from when he was jailed to when California issued its extradition warrant, and (b) whether Roman was amenable to process from when California issued its warrant to when he finished his Stanislaus County sentence.
In our view, Roman was not amenable to process from when he was jailed to when California issued its extradition warrant. In State v. Lee,[19] we held that an out-of-state defendant is not amenable to process until extradition procedures are completed.[20] In State v. Stewart, the Washington Supreme Court expressly agreed,[21] and in State v. Hudson, the same court described Lee with approval.[22] An exception exists when, as in Anderson, an incarcerated out-of-state defendant is affirmatively seeking to waive extradition and return to this state for speedy trial.[23] That exception is not pertinent here, however, because Roman was exercising, not waiving, his extradition rights. It follows that Roman was not amenable to process before the extradition process culminated in an extradition warrant.
Roman also was not amenable to process after the extradition warrant issued, but before he finished his Stanislaus County sentence. A person serving time on an out-of-state sentence is not amenable to process until he or she finishes the out-of-state sentence, unless, as in Anderson, the person is actively seeking to waive his or her extradition rights and return here. Because Roman was not actively seeking his return, he was not amenable to process during any part of his stay in the Stanislaus County jail.
*515 Finally, even if Roman had been amenable to process, the State's use of the Uniform Extradition Act constituted due diligence under the circumstances present here. Without so holding, we assume the State could have brought Roman back here by using either the Uniform Extradition Act, RCW 10.88, or the Interstate Agreement on Detainers, RCW 9.100.010.[24] Using either provision, however, the State would have been subject to the constitutional extradition rights that Roman chose to exercise.[25] As far as is shown here, then, one would not have been significantly faster than the other; the State's prompt use of one showed due diligence; and the State was not required to use both. We conclude that Roman's time in the Stanislaus County jail did not count as part of the time for trial under CrR 3.3, and that the trial court erred by granting his motion for dismissal.
Reversed and remanded for further proceedings.
SEINFELD, J., and BRIDGEWATER, C.J., concur.
NOTES
[1] Finding of Fact 9, Clerk's Papers at 99.
[2] At or before this time, apparently, Cowlitz County's "hold" against Roman was reinstated by the Stanislaus County authorities.
[3] Clerk's Papers at 52.
[4] Clerk's Papers at 54.
[5] Clerk's Papers at 11.
[6] CrR 3.3(c); see State v. Phillips, 66 Wash.App. 679, 682-89, 833 P.2d 411 (1992), overruled in part sub silentio by State v. Greenwood, 120 Wash.2d 585, 845 P.2d 971 (1993).
[7] 87 Wash.2d 870, 557 P.2d 847 (1976). Striker construed an early version of CrR 3.3.
[8] 120 Wash.2d 585, 845 P.2d 971.
[9] Greenwood, 120 Wash.2d at 599, 845 P.2d 971; see also State v. Stewart, 130 Wash.2d 351, 360, 922 P.2d 1356 (1996); State v. Hudson, 130 Wash.2d 48, 54, 921 P.2d 538 (1996).
[10] State v. Carpenter, 94 Wash.2d 690, 694, 619 P.2d 697 (1980); Stewart, 130 Wash.2d at 360, 922 P.2d 1356; Hudson, 130 Wash.2d at 54 n. 4, 921 P.2d 538; Greenwood, 120 Wash.2d at 599, 845 P.2d 971.
[11] Greenwood, 120 Wash.2d at 590, 591, 593, 601, 845 P.2d 971; see also Stewart, 130 Wash.2d at 360-61, 367, 922 P.2d 1356, Hudson, 130 Wash.2d at 54, 55, 58, 921 P.2d 538; Carpenter, 94 Wash.2d at 693, 619 P.2d 697; Striker, 87 Wash.2d at 871-72, 557 P.2d 847, State v. Lee, 48 Wash.App. 322, 325, 738 P.2d 1081 (1987); State v. Hunnel, 52 Wash.App. 380, 384, 760 P.2d 947 (1988).
[12] Hudson, 130 Wash.2d at 54, 921 P.2d 538; Greenwood, 120 Wash.2d at 601, 604-05, 845 P.2d 971.
[13] 121 Wash.2d 852, 855 P.2d 671 (1993).
[14] As we note in the next sentence of the text, Anderson explicitly held that the state had a duty of due diligence. Such a duty arises only when the defendant is amenable to process. Stewart, 130 Wash.2d at 363, 367, 922 P.2d 1356; Hudson, 130 Wash.2d at 55, 58, 921 P.2d 538; State v. Pacheco, 107 Wash.2d 59, 65, 726 P.2d 981 (1986); Carpenter, 94 Wash.2d at 693, 619 P.2d 697. Necessarily, then, Anderson held that the defendant was amenable to process under the circumstances described.
[15] Anderson, 121 Wash.2d at 865, 855 P.2d 671.
[16] Anderson, 121 Wash.2d at 865, 855 P.2d 671.
[17] 130 Wash.2d 48, 921 P.2d 538.
[18] 130 Wash.2d 351, 922 P.2d 1356.
[19] 48 Wash.App. at 322, 738 P.2d 1081.
[20] See Hudson, 130 Wash.2d at 56, 921 P.2d 538 (discussing Lee, 48 Wash.App. at 325, 738 P.2d 1081).
[21] Stewart, 130 Wash.2d at 361, 922 P.2d 1356.
[22] Hudson, 130 Wash.2d at 56, 921 P.2d 538.
[23] Anderson, 121 Wash.2d at 852, 855 P.2d 671.
[24] At this point, we are referring to Article IV of the Interstate Agreement on Detainers. The defendant must invoke Article III, which Roman never attempted to do. Cf. Anderson, 121 Wash.2d 852, 855 P.2d 671.
[25] U.S. Const., art. IV, sec. 2.