FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE    OCT 1 0 2013

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Oct 10, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 86399-7 |
| Petitioner, | |
| v. | EN BANC |
| LISA ANN BYRD, | Filed    OCT 1 0 2013 |
| Respondent, | |

STEPHENS, J.—This case concerns the search of an arrestee's purse incident to her arrest. The decisive question is whether the search of Lisa Byrd's purse was a search of her person. Because the purse was in her lap when she was arrested, it was an article of her person under the long standing "time of arrest" rule. Neither the United States Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), nor our decision in *State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009), restricts searches of the arrestee's person. If the arrest was lawful, the arresting officer was entitled to search Byrd's person and articles closely associated with her person without showing the search

was motivated by particularized concerns for officer safety or evidence preservation. We reverse the Court of Appeals and remand for further proceedings in the trial court.

FACTS AND PROCEDURAL HISTORY

On the evening of November 17, 2009, Yakima Police Officer Jeff Ely (Ely) ran the plates on a Honda Civic he observed parked on the side of the road. Clerk's Papers (CP) at 5; Verbatim Transcript of Hearing (VTH) at 4. Ely determined that the plates were registered to an Acura Integra. VTH at 4-5. He contacted the plate's owner, who confirmed that they were stolen. *Id.* at 11-12. During Ely's investigation, Lisa Ann Byrd, and a companion, entered the Civic and drove away, with Byrd's companion driving. *Id.* at 5. Ely initiated a felony traffic stop. *Id.* at 5, 14. He arrested and secured the driver, who claimed the car belonged to Byrd. *Id.* at 14-15.

Ely returned to the car and placed Byrd under arrest for possession of stolen property. *Id.* at 15. At the time of her arrest, Byrd sat in the front passenger seat with her purse in her lap. *Id.* at 6, 16. Before removing Byrd from the car, Ely seized the purse and set it on the ground nearby. *Id.* at 6, 17. He secured Byrd in a patrol car and returned to the purse within "moments" to search it for weapons or contraband. *Id.* at 6. Inside a sunglasses case in Byrd's purse, Ely found methamphetamine. *Id.* at 7.

At the suppression hearing, the trial court conceded that "[t]he facts here fall slightly outside of being completely on point with *Gant* and *Valdez*" but

-2-

nonetheless concluded that the search of Byrd's purse was valid only if it was motivated by concerns for officer safety or evidence preservation, as described in these cases. CP at 4. The trial court's questioning of Ely focused on whether these exigencies were present. *See* VTH at 19-20 ("[W]as there any concern . . . that she would be able to either access a weapon in the purse or destroy any evidence that might be in the purse?"). Because Byrd was secured and unable to access the purse, the court held Ely's search was unlawful and granted Byrd's motion to suppress. CP at 4, 6.

The Court of Appeals agreed, holding that the search of Byrd's purse had to be justified by concerns for evidence preservation or officer safety. *State v. Byrd*, 162 Wn. App. 612, 615-16, 258 P.3d 686 (2011) (citing *Gant*, 556 U.S. at 343; *Valdez*, 167 Wn.2d at 780 (J.M. Johnson, J., concurring)). Because Byrd was restrained and could not obtain a weapon from or destroy evidence in her purse when Ely searched it, the court affirmed the trial court's order suppressing the fruits of the search. *Id.* at 617. We granted review. *State v. Byrd*, 173 Wn.2d 1001, 268 P.3d 942 (2011).

## ANALYSIS

Byrd asserts that the search of her purse violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Article I, section 7 does not turn on

reasonableness, instead guaranteeing that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.

Article I, section 7 is more protective of individual privacy than the Fourth Amendment, and we turn to it first when both provisions are at issue. *State v. Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013) (citing *State v. Walker*, 157 Wn.2d 307, 313, 138 P.3d 113 (2006)); *State v. Afana*, 169 Wn.2d 169, 176, 233 P.3d 879 (2010). Under article I, section 7, a warrantless search is per se unreasonable unless the State proves that one of the few "carefully drawn and jealously guarded exceptions" applies. *Ortega*, 177 Wn.2d at 122 (citing *Afana*, 169 Wn.2d at 176-77; *State v. Patton*, 167 Wn.2d 379, 386, 219 P.3d 651 (2009)).

At issue here is the search incident to arrest exception. We begin by describing the origins and operation of the two discrete branches of this exception.

*The Search Incident to Arrest Exception to the Warrant Requirement*

The search incident to arrest embraces not one but two analytically distinct concepts under Fourth Amendment and article I, section 7 jurisprudence. In *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), the United States Supreme Court explained that the exception "has historically been formulated into two distinct propositions."

The first of these propositions is that "a search may be made of the area within the control of the arrestee." *Id.* In *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), the Court held that these searches must be

justified by concerns that the arrestee might otherwise access the article to obtain a weapon or destroy evidence. *New York v. Belton*, 453 U.S. 454, 459-61, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), was a short-lived exception to *Chimel* that permitted police to search the interior of a car incident to an occupant's arrest without demonstrating concerns for officer safety or evidence preservation. However, in *Gant*, 556 U.S. at 335, the Court overruled *Belton*, holding that all searches of an arrestee's surroundings, including the interior of a car, must comply with *Chimel*. Searches of an arrestee's surroundings require the same justifications under article I, section 7. *Valdez*, 167 Wn.2d at 777; *Patton*, 167 Wn.2d at 386; *see State v. Snapp*, 174 Wn.2d 177, 188-89, 275 P.3d 289 (2012) (citing *Chimel*, 395 U.S. at 762-63).

Under the second proposition of the search incident to arrest, "a search may be made of the *person* of the arrestee by virtue of the lawful arrest." *Robinson*, 414 U.S. at 224. In *Robinson*, the Court held that under "the long line of authorities of this Court dating back to *Weeks* [*v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914)]" and "the history of practice in this country and in England," searches of an arrestee's person, including articles of the person such as clothing or personal effects, require "no additional justification" beyond the validity of the custodial arrest. 414 U.S. at 235. Instead, a search of the arrestee's person is "not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.*

Unlike searches of the arrestee's surroundings, searches of the arrestee's person and personal effects do not require "a case-by-case adjudication" because they always implicate *Chimel* concerns for officer safety and evidence preservation. *Id.* Thus, their validity "does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Id.*; *see Virginia v. Moore*, 553 U.S. 164, 176-77, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008) (holding "[t]he interests justifying search are present whenever an officer makes an arrest").

The authority to search an arrestee's person and personal effects flows from the authority of a custodial arrest itself. *Robinson*, 414 U.S. at 232 (noting "'[t]he peace officer empowered to arrest must be empowered to disarm. If he may disarm, he may search, lest a weapon be concealed'" (quoting *People v. Chiagles*, 237 N.Y. 193, 197, 142 N.E. 583, 584 (1923) (Cardozo, J.))); *see State v. Hehman*, 90 Wn.2d 45, 49-50, 578 P.2d 527 (1978) (recognizing an arresting officer's "unqualified authority" under *Robinson* to search the arrestee's person pursuant to lawful arrest).

Because this exception is rooted in the arresting officer's lawful authority to take the arrestee into custody, rather than the "reasonableness" of the search, it also satisfies article I, section 7's requirement that incursions on a person's private affairs be supported by "authority of law." *See State v. Grande*, 164 Wn.2d 135, 139, 187 P.3d 248 (2008) (holding "an arrest gives 'authority of law' to search, except where the arrest itself is unlawful" (citing *State v. Parker*, 139 Wn.2d 486,

987 P.2d 73 (1999))). Indeed, in *State v. Ringer*, 100 Wn.2d 686, 691-92, 674 P.2d 1240 (1983), we noted that at the time the Washington constitution was adopted, it was "universally recognized that warrantless searches were allowed of the person of an arrestee when incident to lawful arrest" (citing *State ex rel. Murphy v. Brown*, 83 Wash. 100, 105-06, 145 P. 69 (1914)). And in *State v. Hughlett*, 124 Wash. 366, 370, 214 P. 841 (1923), *overruled on other grounds by Ringer*, 100 Wn.2d at 695, 699, we held that "a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence."

This court has long recognized the distinction between searches of the arrestee's person and surroundings. In *Parker*, 139 Wn.2d at 510, we explained that the rules of *Chimel* and *Robinson* are distinct because "*Chimel* applies to the area within the immediate control of the arrestee and *Robinson* to the person of the arrestee." In *State v. Johnson*, 155 Wn. App. 270, 282, 229 P.3d 824 (2010), the Court of Appeals reaffirmed this distinction, holding that the search of an arrestee's purse was a search of her person, not a search of her vehicle. Notwithstanding the deep historical roots of these two doctrines, the Court of Appeals in this case overruled *Johnson*, dismissing the distinction between searches of a vehicle and searches of the arrestee's person and opining that "[a] search incident to an arrest is a search incident to an arrest whether the object searched is a car or a purse." *Byrd*, 162 Wn. App. at 617.

The Court of Appeals erred. *Johnson* is consistent with *Robinson* and remains good law because neither *Gant* nor *Valdez* requires case-specific showings of officer safety or evidence preservation to justify the search of an arrestee's person.[1] Indeed, neither *Gant* nor *Valdez* (nor any of the cases they rely on or support) even cite to *Robinson* except in passing. This is no surprise, as these cases deal only with searches of the area immediately around the arrestee, not searches of the arrestee's person. *See Gant*, 556 U.S. at 336 (search of jacket in backseat outside driver's control); *Belton*, 453 U.S. at 462 (search of vehicle interior); *Afana*, 169 Wn.2d at 174 (same); *Snapp*, 174 Wn.2d at 182-86 (same); *Valdez*, 167 Wn.2d at 768-78 (same); *Patton*, 167 Wn.2d at 382 (same); *State v. Stroud*, 106 Wn.2d 144, 145-46, 720 P.2d 436 (1986) (same); *Ringer*, 100 Wn.2d at 688, 697 (same).

The lower courts in this case erred by conflating the two distinct branches of the search incident to arrest exception and the dissent would perpetuate the error. Although the dissent concedes that custodial arrest "always justifies a search of the arrestee's person," it complains that the officer "could have delayed the search" because no exigencies were present. Dissent at 7, 8. This complaint overlooks the

---

[1] The Third Circuit is apparently alone in its belief that *Gant* applies to searches of an arrestee's personal articles. *See United States v. Shakir*, 616 F.3d 315, 318 (3d Cir. 2010). The Ninth Circuit does not agree and reads *Shakir* narrowly. *See United States v. Gordon*, 895 F. Supp. 2d 1011, 1018-19 (D. Haw. 2012). Other courts have not taken up *Shakir* on this point, and we are unable to find additional authority for this view. *See State v. Ellis*, 355 S.W.3d 522, 524 (Mo. Ct. App. 2011) (noting the lack of "any reported federal or state appellate opinion that has extended *Gant* to the search of an arrestee's personal effects, such as a purse or backpack, that are on the person of an arrestee at the time of the arrest").

fact that exigencies are *presumed* when an officer searches an arrestee's person. The search incident to arrest rule respects that an officer who takes a suspect into custody faces an unpredictable and inherently dangerous situation and that officers can and should put their safety first. Neither *Gant* nor *Valdez* circumscribed the State's authority to search an arrestee's person, and these searches remain valid under the Fourth Amendment and article I, section 7 so long as they are incident to a lawful custodial arrest, whatever exigencies the dissent perceives in hindsight. Assuming Ely had probable cause to arrest Byrd, the search of her purse was valid if it was a search of an article of her person, as discussed below.

*The "Time of Arrest" Rule*

Whether a search incident to arrest is governed by *Chimel* or *Robinson* turns on whether the item searched was an article of the arrestee's person. *See United States v. Chadwick*, 433 U.S. 1, 15, 97 S. Ct. 2476, 2486, 53 L. Ed. 2d 538 (1977) (requiring *Chimel* justification only for searches of "personal property *not* immediately associated with the person of the arrestee" (emphasis added)), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991). Many courts, including Washington courts, draw a bright line between these two prongs of the search incident to arrest exception with the "time of arrest" rule.

Under this rule, an article is "immediately associated" with the arrestee's person and can be searched under *Robinson*, if the arrestee has actual possession of it at the time of a lawful custodial arrest. *See United States v. Oakley*, 153 F.3d

696, 697-98 (8th Cir. 1998) (backpack); *United States v. Tavolacci*, 895 F.2d 1423, 1428-29 (D.C. Cir. 1990) (luggage); *Carter v. State*, 367 Md. 447, 788 A.2d 646, 655 (2002) (lunch bag); *State v. Ellis*, 355 S.W.3d 522, 524-25 (Mo. Ct. App. 2011) (backpack); *People v. Brown*, 36 A.D.3d 931, 828 N.Y.S.2d 550, 551 (2007) (backpack); *People v. Boff*, 766 P.2d 646, 651-52 (Colo. 1988) (backpack). *See generally* Andrea G. Nadel, Annotation, *Lawfulness of Warrantless Search of Purse or Wallet of Person Arrested or Suspected of Crime*, 29 A.L.R.4TH § 3[a], at 780 (1984 & 2012 Supp.) (collecting cases).

The time of arrest rule reflects the practical reality that a search of the arrestee's "person" to remove weapons and secure evidence must include more than his literal person. In *United States v. Graham*, 638 F.2d 1111, 1114 (7th Cir. 1981), the court explained that "[t]he human anatomy does not naturally contain external pockets, pouches, or other places in which personal objects can be conveniently carried." When police take an arrestee into custody, they also take possession of his clothing and personal effects, any of which could contain weapons and evidence. *See United States v. Edwards*, 415 U.S. 800, 806, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974) (observing that "the police had lawful custody of [the suspect] and necessarily of the clothing he wore"). The time of arrest rule recognizes that the same exigencies that justify searching an arrestee prior to

placing him into custody extends not just to the arrestee's clothes, however we might define them, but to all articles closely associated with his person.[2]

Washington courts have long applied this rule, holding that searches of purses, jackets, and bags in the arrestee's possession at the time of arrest are lawful under both the Fourth Amendment and article I, section 7. In *State v. Bonds*, 174 Wn. App. 553, 569-70, 299 P.3d 663, 671-72 (2013), the Court of Appeals correctly reasoned that searches of an arrestee's person were untouched by *Gant* and *Valdez*, and that a warrantless search of the arrestee's personal effects satisfies both the Fourth Amendment and article I, section 7. This was entirely consistent with *Hughlett*, 124 Wash. at 370, in which we reasoned that "[i]f a search may be made of the person or clothing of the person lawfully arrested, then it would follow that a search may also be properly made of his grip or suitcase which he may be carrying." *See Parker*, 139 Wn.2d at 498-99 (recognizing that under article I, section 7, "[p]ersonal items may be 'so intimately connected with' an individual that a search of the items constitutes a search of the person" (quoting *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994))); *State v. Smith*, 119 Wn.2d 675, 681, 835 P.2d 1025 (1992) (finding search incident to arrest lawful under the Fourth Amendment if "the object searched was within the arrestee's control when he or she was arrested"); *Ringer*, 100 Wn.2d at 697 (recognizing under article I, section 7 "[the] right to search and seize without a search warrant extends to things under

---

[2] The dissent concedes the necessity for this rule, but disavows its application to Byrd without offering a competing test. Dissent at 7-8.

the accused's immediate control"); *see also State v. Salinas*, 169 Wn. App. 210, 220-22, 279 P.3d 917 (2012) (collecting cases, and holding under article I, section 7, "[t]he fact of a lawful arrest is enough by itself to justify a warrantless search of the person," including "clothing and personal possessions closely associated with clothing"), *review denied*, 176 Wn.2d 1002 (2013); *State v. Seitz*, 86 Wn. App. 865, 869, 941 P.2d 5 (1997) (holding that officers could lawfully search an arrestee's purse, but not a purse belonging to a nonarrested passenger).

We caution that the proper scope of the time of arrest rule is narrow, in keeping with this "jealously guarded" exception to the warrant requirement. *Ortega*, 177 Wn.2d at 122. It does not extend to all articles in an arrestee's constructive possession, but only those personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest. Some of our cases contain dicta, based on loose language from *Belton*, suggesting that the rule covers articles within the arrestee's reach. *See, e.g., Smith*, 119 Wn.2d at 681-82 (holding correctly that an arrestee's purse is an article of her person, but claiming a broader rule). This suggestion is incorrect. Searches of the arrestee's person incident to arrest extend only to articles "in such immediate physical relation to the one arrested as to be in a fair sense a projection of his person." *United States v. Rabinowitz*, 339 U.S. 56, 78, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurter, J., dissenting) (describing the historical limits of the exception). Extending *Robinson* to articles within the arrestee's reach but not actually in his possession exceeds the rule's rationale and infringes on territory reserved to *Gant* and *Valdez*.

Here, Byrd's purse was unquestionably an article "immediately associated" with her person. As the dissenting judge in the Court of Appeals astutely observed, "the purse was within Ms. Byrd's reach and could even be described as on her person, not only at the stop but at the time of arrest." *Byrd*, 162 Wn. App. at 618 (Brown, J., dissenting). The purse left Byrd's hands only after her arrest, when Ely momentarily set it aside. There was no "significant delay between the arrest and the search" that would "render[] the search unreasonable." *Smith*, 119 Wn.2d at 683; *see Chadwick*, 433 U.S. at 15 (rejecting search of a footlocker more than an hour after arrest as too remote in time and place). Assuming Ely had probable cause to place Byrd under arrest, he had lawful authority to remove her and all articles closely associated with her person from the car, and the search was valid under the Fourth Amendment and article I, section 7.

Byrd's assertion that "[a]bsent the forced removal" her purse was "associated with the vehicle," either overlooks the time of arrest rule or asks us to tacitly overrule it. Br. of Resp't at 10. Byrd cites no authority for the claim that she could have shed the purse after being placed under arrest, and her proposed rule has no limits. If an officer cannot prevent an arrestee from leaving her purse in a car, what of other personal articles, such as an arrestee's jacket, baggie of drugs, or concealed firearm? We reject Byrd's claim and hold that if Ely had authority to seize Byrd and place her under custodial arrest, he also had authority to seize articles of her person, including her clothing and purse that were in her possession at the time of arrest.

Finally, Byrd asks us to hold that the purse was within a special zone of protection because it was "located in the car's constitutionally protected interior." Br. of Resp't at 12. This misstates the issue. *Gant* did not enact special constitutional protections for belongings inside cars; it restored the same protections all searches of an arrestee's surroundings enjoy under *Chimel*. *Gant*, 556 U.S. at 343 (citing *Chimel*, 453 U.S. at 460). These protections are no broader than *Chimel* and do not include the arrestee's person or her personal articles, even if the arrestee is in a car at the time of arrest.

Police may not evade *Gant* by removing an article from a car before searching it, but this is not because the federal and state constitutions specially protect articles in cars. It is because, under *Chimel*, the State must justify the warrantless search of *every* article not on the arrestee's person or closely associated with the arrestee's person at the time of his or her arrest. The distinction does not turn on whether a person is arrested in a car, on the street, or at home, but on the relationship of the article to the arrestee. *See Robinson*, 414 U.S. at 220 (search of the person or vehicle occupants); *Chimel*, 395 U.S. at 753-54 (search of arrestee's home). Here, if Byrd's arrest was lawful, the search of her purse was both reasonable and supported by authority of law.[3]

---

[3] As Justice González notes in his concurrence, the circumstances of Byrd's arrest raise a question about whether Ely had probable cause to place Byrd under arrest on the word of the driver and thus whether the search of her purse was supported by the authority of a lawful arrest. Byrd raised this issue at the Court of Appeals, but that court did not address it, having found the search invalid under *Gant* and *Valdez*. On remand, nothing precludes the trial court from considering Byrd's challenge. *See State v. Stein*,

## CONCLUSION

The search incident to arrest exception encompasses two distinct rationales. A search of the arrestee's immediate area must be justified by concerns for officer safety or evidence preservation, while a search of the arrestee's person and articles of his or her person is justified by the authority of a lawful arrest.

We rely on the time of arrest rule and hold that because Byrd's purse was on her lap at the time of her arrest, it was an article of her person. If Ely had probable cause to arrest Byrd, his search of her purse was lawful under the Fourth Amendment and article I, section 7. We reverse the Court of Appeals and remand for further proceedings in the trial court.

---

144 Wn.2d 236, 248, 27 P.3d 184 (2001) (allowing consideration of additional arguments on remand).

Stephens, J.

WE CONCUR:

Madsen, C.J.

Johnson, J.

J.M. Johnson, J.

González, J.

No. 86399-7

GONZÁLEZ, J. (concurring)—I join the majority opinion; if the arrest was lawful, the arresting officer was entitled to search Lisa Byrd's purse—which she was holding on her lap when she was arrested—without showing the search was motivated by particularized concerns for officer safety or evidence preservation. Majority at 1-2, 8, 12. I write separately to stress that the record before this court presents serious doubt as to whether the officer had probable cause to arrest Byrd for possession of stolen property.

Police officers have the authority to make warrantless arrests based on probable cause, which "exists when the arresting officer is aware of facts or circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed" by the person to be arrested. *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004) (emphasis omitted) (citing *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)). The test for probable cause "is one of reasonableness, considering the time, the place, and the pertinent circumstances." *Plancich v. Williamson*, 57 Wn.2d 367, 375, 357 P.2d 693 (1960).

Based on the information from dispatch and Officer Ely's contact with the

registered owner of the license plates on the car, Officer Ely had probable cause to believe the license plates were stolen. What is lacking in the record before us is reasonably trustworthy information that Byrd had anything to do with the theft of the plates. Officer Ely arrested Byrd for possessing stolen property (the license plates) after the driver of the vehicle pointed his finger at her as the owner. Byrd's mere presence as a passenger in the vehicle and the driver's uncorroborated statement were the only facts associating Byrd with criminal activity, and by themselves were insufficient to establish probable cause that Byrd knowingly possessed the stolen plates.

Essentially, the officer arrested Byrd on the word of an informant. In such cases, the constitutional criteria for determining probable cause are measured by the two-pronged *Aguilar-Spinelli*[1] test. *State v. Lyons*, 174 Wn.2d 354, 359 n.1, 275 P.3d 314 (2012) (citing *State v. Jackson*, 102 Wn.2d 432, 443, 688 P.2d 136 (1984)). Under the test, "probable cause will exist only if the informant's basis of knowledge and veracity have been demonstrated or if the substance of the tip has been verified by independent investigation." *State v. Murray*, 110 Wn.2d 706, 711, 757 P.2d 487 (1988) (citing *State v. Huft*, 106 Wn.2d 206, 209-10, 720 P.2d 838 (1986)); *see also State v. Jackson*, 102 Wn.2d 432, 436-38, 688 P.2d 136 (1984). The veracity prong may be satisfied if the credibility of the informant is established, but in the absence of information about the informant, the facts and circumstances surrounding the

---

[1] 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969)

furnishing of the information may support a reasonable inference that the informant is telling the truth. *State v. Lair*, 95 Wn.2d 706, 709-10, 630 P.2d 427 (1981) (citing *State v. Thompson*, 13 Wn. App. 526, 530, 536 P.2d 683 (1975); *State v. Johnson*, 17 Wn. App. 153, 155, 561 P.2d 701 (1977)). Various factors can contribute to an inference that an informant is telling the truth, including an informant's willingness to be named and stand publicly by his or her information and an informant's admission against his or her own penal interest. *See State v. Chamberlin*, 161 Wn.2d 30, 41-42, 162 P.3d 389 (2007); *State v. Chenoweth*, 160 Wn.2d 454, 483-84, 158 P.3d 595 (2007); *Lair*, 95 Wn.2d at 711.

Here, the information from the driver was not furnished under circumstances giving reasonable assurances of trustworthiness. Although eventually arrested on outstanding warrants, the driver was initially removed from the car and detained for possession of stolen property. At that time, while on the ground, the driver "told [Officer Ely] several times the car was not his" and was "very adamant, very excited that it was not his car." Verbatim Transcript of Hearing at 5, 13-14. He said that Byrd had asked him to drive the car away after they saw the officer checking the vehicle identification number. *Id.* at 13. At that time, the driver had a significant motive to lie to attempt to deflect the blame from himself. His uncorroborated statement does not pass muster under the *Aguilar-Spinelli* standard. Additional circumstances either establishing the driver's reliability or independently associating Byrd with criminal activity are required to establish probable cause; otherwise

3

individuals are left susceptible to scapegoating and the consequent unreasonable interference with their liberties. *See United States v. Di Re*, 332 U.S. 581, 587, 68 S. Ct. 222, 92 L. Ed. 210 (1948) (a person does not, "by mere presence in a suspected car, lose[ ] immunities from search of his person to which he would otherwise be entitled").

As the majority opinion notes, nothing precludes the trial court from considering the probable cause issue on remand. Majority at 14 n.3. If Byrd's arrest was unlawful, the search incident to arrest exception to the warrant requirement does not apply and the evidence must be suppressed.

Gonéler, J.

No. 86399-7

FAIRHURST, J. (dissenting)—The majority expands the scope of the search incident to arrest exception beyond the limits permitted by the Washington State Constitution. The majority reverses the trial court and the Court of Appeals and allows evidence found in a glasses case in a purse that the officer removed from an arrestee sitting in a car and evidence only found when the purse was searched after securing the arrestee in a police vehicle. The Court of Appeals affirmed the suppression of the evidence based on federal constitutional grounds. *State v. Byrd*, 162 Wn. App. 612, 258 P.3d 686 (2011). I would affirm based on state constitutional grounds.

Article I, section 7 of the Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The parallel provision of the United States Constitution, the Fourth Amendment, reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

1

violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

When a defendant challenges a search under both the state and federal constitutions, as Lisa Ann Byrd has done here, we examine the permissibility of the search under article I, section 7 first. Br. of Resp't at 8; *City of Seattle v. Mesiani*, 110 Wn.2d 454, 456, 755 P.2d 775 (1988). If the search is invalid under article I, section 7, any inquiry into the validity of the search "begins and ends" with the state constitution. *State v. Parker*, 139 Wn.2d 486, 493, 987 P.2d 73 (1999).[1]

Though both provisions govern law enforcement's power to search and seize, article I, section 7 differs from the Fourth Amendment by guarding against unauthorized invasions of privacy rather than unreasonable searches or seizures. Article I, section 7, "unlike any provision in the federal constitution, explicitly protects the privacy rights of Washington citizens and these privacy rights include the freedom from warrantless searches absent special circumstances." *State v.*

---

[1]Many of our cases, like *Parker*, discuss the search incident to arrest exception in the context of searches of an automobile incident to arrest. While we have sometimes discussed the automobile search incident to arrest exception, this is merely an application of the search incident to arrest exception and not a separate doctrine. *State v. Patton*, 167 Wn.2d 379, 386 & n.4, 219 P.3d 651 (2009). Hence, these cases guide our discussion of the general search incident to arrest exception.

*Stroud*, 106 Wn.2d 144, 148, 720 P.2d 436 (1986) (citation omitted), *overruled on other grounds by State v. Buelna Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009).

As noted by the *Stroud* court, article I, section 7 typically requires that police obtain authority of law in the form of a warrant before engaging in a search. Article I, section 7 generally requires a warrant because doing so interposes "a neutral and detached magistrate" between the citizenry and "the officer engaged in the often competitive enterprise of ferreting out crime" and ensures an objective look at "the need to invade [the citizen's] privacy in order to enforce the law." *United States v. Johnson*, 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948); *McDonald v. United States*, 335 U.S. 451, 455, 69 S. Ct. 191, 93 L. Ed. 153 (1948).

However, article I, section 7 recognizes that other sources of law, such as the common law, may authorize a law enforcement search in lieu of a warrant in a small number of circumstances. *State v. Ringer*, 100 Wn.2d 686, 691, 674 P.2d 1240 (1983), *overruled on other grounds by Stroud*, 106 Wn.2d at 150-51 (Article I, section 7 "poses an almost absolute bar to warrantless arrests, searches, and seizures, with only limited exceptions.").[2] One of these warrantless searches authorized by the common law is a search incident to a lawful custodial arrest. *Id.*;

---

[2]"*Ringer* was overruled by *Stroud*, but in retrospect only temporarily." *State v. Snapp*, 174 Wn.2d 177, 193, 275 P.3d 289 (2012).

*State v. O'Neill*, 148 Wn.2d 564, 585-86, 62 P.3d 489 (2003). Washington's search incident to arrest exception to the warrant requirement is descended from common law and coextensive in scope with the common law exception for warrantless searches incident to arrest. *Buelna Valdez*, 167 Wn.2d at 773.

The permissible scope of any warrantless search is limited by its justifications so that exceptions to the warrant requirement do not "swallow what our constitution enshrines." *State v. Day*, 161 Wn.2d 889, 894, 168 P.3d 1265 (2007); *State v. Patton*, 167 Wn.2d 379, 386, 219 P.3d 651 (2009). This limited scope applies to a search incident to arrest as well. "The right to search incident to arrest 'is merely one of those very narrow exceptions to the guaranties and immunities which we inherited from our English ancestors, and which had from time immemorial been subject to certain well-recognized exceptions arising from the necessities of the case.'" *Ringer*, 100 Wn.2d 699-700 (internal quotation marks omitted) (quoting *United States v. Rabinowitz*, 339 U.S. 56, 72, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurter, J., dissenting), *overruled in part by Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)). "The exception must be 'jealously and carefully drawn', and must be strictly confined to the necessities of the situation." *Id.* (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)).

At common law, two necessities justified warrantless searches incident to arrest and defined the permissible scope of such searches. First, a search allowed officers to discover weapons or tools that the arrestee could use to harm the officer or otherwise escape. *Id.* at 692 (citing *Lehigh v. Cole*, 6 Cox Crim. L. Cas. 329, 332 (Oxford Cir. 1853)). Second, a search allowed police to turn up evidence of the crime of arrest, preventing the arrestee from destroying the evidence. *Id.* at 692-93 (citing *Dillon v. O'Brien*, 20 L.R. Ir. 300, 316-17 (Ex. D. 1887)).

As the majority notes, searches incident to arrest encompass searches of both the person of the arrestee and his or her surroundings. Majority at 4-7. The same justifications underlie both types of searches. *See, e.g., State ex rel. Murphy v. Brown*, 83 Wash. 100, 105-06, 145 P. 69 (1914) (an arrest authorizes a warrantless search of the arrestee's person to discover evidence of the crime of arrest). Distinctions exist between the searches because the validity of a search incident to arrest is measured at the time of the search. *Patton*, 167 Wn.2d at 394-95. Any weapon or evidence secreted on the person of the arrestee is always accessible, so a search of the person of the arrestee is always permissible. *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). To search the area immediately around the arrestee at the time of arrest, however, the police must

demonstrate that the arrestee could reach the area to obtain a weapon or destroy evidence. *Buelna Valdez*, 167 Wn.2d at 778.

Neither of the necessities recognized by the common law and authorizing a search incident to arrest justifies the search of Byrd's purse.

First, Byrd could not obtain a weapon from the purse at the time of the search. The officer had doubly secured Byrd by that point—he had handcuffed her and taken the additional precautionary step of placing her in a police car lacking door handles. Clerk's Papers at 5. The trial court specifically found that Byrd could not have accessed the purse at any time after her arrest and that the purse posed no danger to the safety of the officer. *Id.* The State does not challenge these findings, making them verities on appeal. *O'Neill*, 148 Wn.2d at 571. On these facts, the State cannot justify the search as necessary to discover weapons.

Nor could Byrd have destroyed evidence of the crime of arrest located inside her purse. The officer arrested Byrd for possessing stolen property.[3] Any evidence of Byrd's possession of the stolen plates was attached to her car and not within her

---

[3]The officer arrested Byrd for possession of stolen property after seeing her car, running its plates, and finding the plates did not match the car. The officer contacted the owner of the plates, who at first confirmed they were stolen. The owner retracted the accusation after learning that her son had sold the car involved to Byrd two days before Byrd's arrest. The State never charged Byrd with possession of stolen property, meaning the only charges in this case stem from the search made in the course of the mistaken arrest.

purse. In any event, Byrd was secured inside a police vehicle and unable to reach the purse to destroy any evidence inside it.

The Court of Appeals properly found that neither common law justification permitted the search of Byrd's purse. *Byrd*, 162 Wn. App. at 617. The Court of Appeals only erred by examining the permissibility of this search under the federal constitution before doing so under the Washington State Constitution. *Id.* at 615-17 (analyzing the search under the Fourth Amendment). We should affirm the Court of Appeals, but do so on state constitutional grounds.

The majority would allow the search of the purse because it characterizes the purse as being part of Byrd's person. Majority at 10 (reasoning that treating the purse as part of Byrd's person "reflects the practical reality that a search of the arrestee's 'person' to remove weapons and secure evidence must include more than his literal person"). I agree with the majority that a search incident to arrest always justifies a search of the arrestee's person; however, I disagree that the search of this purse was a search of Byrd's person.

Courts have, for several generations, noted the peculiar susceptibility of the search incident to arrest to a """"progressive distortion"""" allowing searches whose scopes exceed their justifications. *Patton*, 167 Wn.2d at 389 (quoting *Ringer*, 100 Wn.2d at 694 (quoting *Rabinowitz*, 339 U.S. at 75)). We must remember that the

7

search incident to arrest exception to the warrant requirement is born of, and should be limited to, necessity.

This, however, is not a case of necessity. The officer removed Byrd's purse from her car, and he had no need to do so.[4] Leaving the purse in the car would have posed no threat to the safety of the officer or of the general public. Nor would doing so have posed any danger to any evidence inside. By sweeping with a broad brush and announcing that police may always treat certain items in the possession of an arrestee as part of the arrestee, and therefore search the items without demonstrating any danger to the safety of officers or evidence, the majority has needlessly divorced the exception from its justifications and limits.

"'[W]hen a search can be delayed to obtain a warrant without running afoul of' concerns for the safety of the officer or to preserve evidence of the crime of arrest from concealment or destruction by the arrestee [and no other exception applies] 'the warrant *must be obtained.*'" *Snapp*, 174 Wn.2d at 195 (quoting *Buelna Valdez*, 167 Wn.2d at 773). The officer, by simply leaving Byrd's purse where it was, could have delayed the search of the purse and attempted to obtain a warrant where a neutral magistrate would have determined that law enforcement

---

[4]This is not a case where police officers make an arrest in public and must either search the object before transporting the object to jail to verify that it posed no risk to their safety or allow the arrestee to abandon it in public, where once abandoned the police could search it.

had sufficient justification for the invasion of Byrd's privacy as required by article I, section 7.

## CONCLUSION

When the officer took the purse, it was located in Byrd's car where it posed no threat to anyone or anything and enjoyed the privacy protections of article I, section 7. *Mesiani*, 110 Wn.2d at 456-57 (citing *State v. Gibbons*, 118 Wash. 171, 187, 203 P. 390 (1922) ("From the earliest days of the automobile in this state, this court has acknowledged the privacy interest of individuals and objects in automobiles.")). The majority divests the purse of these protections by needlessly considering the purse a part of Byrd's person.

The trial court's undisputed findings of fact reflect that neither Byrd nor the purse posed any danger to the safety of the officer or public or to the destruction of evidence of the crime of arrest. The police should have sought a warrant to search the purse. Treating Byrd's purse as part of her person serves none of the purposes justifying a search incident to arrest. Because the officer did not obtain a warrant, and because the State does not offer any other permissible justification for this warrantless search, we should hold that the trial court properly ruled the search was invalid and properly suppressed the evidence discovered inside the purse.

We have, within the last 30 years, twice been forced to rein in the scope of the search incident to arrest exception because of the progressive distortion described by Justice Frankfurter. *Buelna Valdez*, 167 Wn.2d at 774-77; *Ringer*, 100 Wn.2d at 698-700. The majority once again loosens the tether of the justifications for the search incident to arrest exception. I dissent.

Fairhurst, J.

Charles JPT

Owens, J.

Wiggins, J.