# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52994-7-II |
| Respondent, | |
| v. | |
| CHERYL ANN HEATH, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, A.C.J. — Cheryl Ann Heath appeals her conviction for unlawful possession of a controlled substance, cocaine.[1]  Heath's conviction was based on the discovery of cocaine in a backpack that she had been wearing when a law enforcement officer observed her commit a traffic infraction.  Heath had set down the backpack immediately before her initial detention.  The trial court concluded that the search of the backpack was a proper search incident to arrest under the "time of arrest rule."

Heath argues that the trial court erred when it (1) admitted the arresting officer's investigation report under ER 104 and ER 1101 at the suppression hearing without also requiring the arresting officer to testify when there were material factual issues that needed to be resolved, (2) refused to decide the disputed issue of when Heath set down her backpack in relation to when the arresting officer activated her patrol vehicle's emergency lights, and (3) concluded that the

---

[1] Heath was also convicted of operating a motor vehicle without an ignition interlock device, but she raises no issues related to this conviction.

search of the backpack was a lawful search incident to arrest under the time of arrest rule. Because the trial court did not rely on the officer's report to support its conclusion that the search of the backpack was lawful and Heath's own testimony supports the trial court's decision, we affirm Heath's conviction.

## FACTS[2]

After stopping Heath for making an illegal turn on her motorcycle, Officer Jennifer Corn and a second officer arrested Heath for driving without an ignition interlock device. After the arrest, the officers searched Heath's backpack and found cocaine.

The State charged Heath with unlawful possession of a controlled substance, cocaine, and operating a motor vehicle without an ignition interlock device. Heath moved to suppress the drug evidence, arguing that the search of the backpack was illegal.

At the suppression hearing, the State relied exclusively on Corn's certified investigation report. Heath declined to stipulate to Corn's report and objected to the State's reliance on the report without also presenting testimony from Corn. The trial court overruled the objection.

In her report, Corn stated that she had observed Heath make an illegal turn, stop her motorcycle, and light a cigarette. Corn then pulled in behind Heath and activated the patrol car's overhead lights. Corn further stated that when she approached Heath, Heath "got off the bike and took off her backpack." Clerk's Papers (CP) at 16.

---

[2] The brief background facts are based on the trial court's unchallenged findings of fact, which are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Heath also testified at the hearing. She stated that she made an illegal turn after driving off of the Bremerton-Seattle ferry while wearing the backpack and immediately pulled over to smoke a cigarette. After pulling over, she got off of the motorcycle, removed her backpack, took her cigarettes out of the backpack, and set the backpack on the ground. After placing her backpack on the ground and lighting her cigarette, Heath first noticed the patrol car's emergency lights. She assumed that the officer was contacting her because the officer had observed her make the illegal turn. Heath estimated that the officer approached her about 30 seconds after Heath had removed her backpack to take out her cigarettes. Heath commented that "[i]t doesn't take long to take my cigarettes out and light them, and I turned around and saw the lights."

The trial court denied Heath's motion to suppress. The trial court's written findings of fact and conclusions of law provided, in part:

FINDINGS OF FACT

IV.

That Corn saw defendant make a left turn through a no left turn zone and immediately pull[ ] over to smoke a cigarette.

V.

That Corn initiated a traffic stop of the defendant.

VI.

That defendant took off her backpack. Cheryl Heath testified she took off her backpack prior to Officer Corn activating her emergency lights. Officer Corn did not testify at the hearing, although her report was admitted. *The Court declines to make findings whether [Heath] removed the backpack before or after the emergency lights were activated* because the Court would reach the same conclusions regardless.

VII.

That defendant removed a pack of cigarettes from the backpack and placed her backpack beside her motorcycle. She was in the process of lighting a cigarette when Officer Corn approached her.

CONCLUSIONS OF LAW

II.

That *State v. Byrd*,[3] *State v. Brock*,[4] and the "Time of Arrest" rule allow officers to search an arrestee's belongings when they are in the arrestee's actual and exclusive possession at or immediately preceding arrest.

III.

That defendant actually and exclusively possessed the backpack immediately preceding arrest.

IV.

That officers lawfully searched defendant's backpack incident to arrest.

CP at 57-58 (emphasis added).

Following a stipulated facts trial, the trial court found Heath guilty of unlawful possession of a controlled substance, cocaine, and operating a motor vehicle without an ignition interlock device. Heath appeals the denial of her suppression motion and her resulting conviction for unlawful possession of a controlled substance, cocaine.

ANALYSIS

I. ADMISSION OF CORN'S REPORT

Heath first argues that the trial court erred in admitting Corn's report under ER 104 and ER 1101 because the report was inadmissible hearsay and the trial court was required to resolve credibility issues at the suppression hearing. Specifically, Heath argues that the trial court should not have admitted the report because "there was a material disputed fact: did the defendant remove her backpack before or after the officer activated her emergency lights." Br. of Appellant at 13.

---

[3] 178 Wn.2d 611, 310 P.3d 793 (2013).

[4] 184 Wn.2d 148, 355 P.3d 1118 (2015).

We need not reach this issue because, as discussed below, the trial court did not rely on Corn's report to resolve the disputed suppression issue.

## II. EVIDENCE WAS PROPERLY ADMITTED UNDER THE TIME OF ARREST RULE

Heath argues that the trial court erred in refusing to decide the disputed issue of when Heath set her backpack down and in concluding that the search of her backpack was a lawful search incident to arrest under the time of arrest rule. We disagree.

### A. LEGAL PRINCIPLES

#### 1. Review Standard

We review the trial court's denial of a CrR 3.6 suppression motion by examining "whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'" *Garvin*, 166 Wn.2d at 249 (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). We consider unchallenged findings of fact verities on appeal. *Reid*, 98 Wn. App. at 156. We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Garvin*, 166 Wn.2d at 249.

#### 2. Time of Arrest Rule

One exception to the warrant requirement is a search incident to arrest. *Brock*, 184 Wn.2d at 154. There are "two analytically distinct concepts" encompassed by this exception. *Byrd*, 178 Wn.2d at 617. "The first of these propositions is that 'a search may be made of the area within the control of the arrestee.'" *Byrd*, 178 Wn.2d at 617 (quoting *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)). "[T]he second proposition of the search incident

to arrest" allows for searches "'of the person of the arrestee by virtue of the lawful arrest.'" *Byrd*, 178 Wn.2d at 617 (emphasis omitted) (quoting *Robinson*, 414 U.S. at 224).

"[S]earches of an arrestee's person, including articles of the person such as clothing or personal effects, require 'no additional justification' beyond the validity of custodial arrest." *Byrd*, 178 Wn.2d at 617-18 (quoting *Robinson*, 414 U.S. at 235). "The authority to search an arrestee's person and personal effects flows from the authority of a custodial arrest itself." *Byrd*, 178 Wn.2d at 618 (citing *Robinson*, 414 U.S. at 232). "Washington law has long recognized the validity of searching a defendant and the property immediately within his or her control without a warrant in the process of making an arrest." *State v. Ellison*, 172 Wn. App. 710, 719, 291 P.3d 921 (2013).

In recent years, our Supreme Court has further refined the search of a person exception to the warrant requirement in *Byrd* and *Brock*. In *Byrd*, Byrd was arrested for possession of stolen property after a police officer confirmed that the car she was riding in had stolen license plates. 178 Wn.2d at 615. At the time of her arrest, she was sitting in the front passenger seat with her purse in her lap. *Byrd*, 178 Wn.2d at 615. Before removing Byrd from the car, an officer took Byrd's purse from her lap and placed it on the ground nearby. *Byrd*, 178 Wn.2d at 615. After placing Byrd in a patrol car, the officer searched the purse and discovered methamphetamine. *Byrd*, 178 Wn.2d at 615.

Our Supreme Court concluded that the search of the purse was lawful, holding that the search of a person exception extends to personal property "immediately associated" with the arrestee's person and concluding that the purse in question was immediately associated with Byrd's person at the time of arrest. *Byrd*, 178 Wn.2d at 621, 623. The court cautioned that this exception did not apply to all "articles within the arrestee's reach but not actually in his [or her]

6

possession." *Byrd*, 178 Wn.2d at 623. Instead, the exception applied to "only those personal articles in the arrestee's actual and exclusive possession at *or immediately preceding* the time of arrest." *Byrd*, 178 Wn.2d at 623 (emphasis added). And the court limited such searches "only to articles 'in such immediate physical relation to the one arrested as to be in a fair sense a projection of his person.'" *Byrd*, 178 Wn.2d at 623 (quoting *United States v. Rabinowitz*, 339 U.S. 56, 78, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurther, dissenting), *overruled by Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)).

Two years later, our Supreme Court examined the scope of the language "immediately preceding arrest" in *Brock*. 184 Wn.2d at 154. In *Brock*, officers searched the backpack that Brock had been carrying when the officers approached him in a public park. 184 Wn.2d at 151. The officers took the backpack from Brock for safety purposes and to facilitate a *Terry*[5] stop and frisk, and they placed the backpack in the passenger seat of a patrol vehicle. *Brock*, 184 Wn.2d at 151-52. After discovering that Brock was providing false information, the officers arrested him and searched the backpack. *Brock*, 184 Wn.2d at 152.

Our Supreme Court held that the backpack was part of Brock's "person" at the time of the arrest even though he was not wearing it when he was formally arrested. *Brock*, 184 Wn.2d at 158-59. The court explained:

> When the personal item is taken into custody as a part of the arrestee's person, the arrestee's ability to reach the item during the arrest and search becomes irrelevant.
>
> Rather, the safety and evidence preservation exigencies that justify this "time of arrest" distinction stem from the safety concerns associated with the officer having to secure those articles of clothing, purses, *backpacks*, and even luggage, that will travel with the arrestee into custody. Because those items are part of the

---

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

person, we recognize the practical reality that the officer seizes those items during the arrest. From that custodial authority flows the officer's authority to search for weapons, contraband, and destructible evidence.

*Brock*, 184 Wn.2d at 156 (emphasis added).

The court then further concluded that the lapse of time between Brock's physical possession of the backpack and his arrest was not the determinative factor as to whether he had the backpack in his actual possession immediately preceding his arrest. *Brock*, 184 Wn.2d at 158-59. The court explained:

Although we must draw these exceptions to the warrant requirement narrowly, we do not draw them arbitrarily; the exception must track its underlying justification. . . . [W]e draw the line of "immediately preceding" with that focus. *The proper inquiry is whether possession so immediately precedes arrest that the item is still functionally a part of the arrestee's person.* Put simply, personal items that will go to jail with the arrestee are considered in the arrestee's "possession" and are within the scope of the officer's authority to search.

*Brock*, 184 Wn.2d at 158 (emphasis added).

The court continued:

Under these circumstances, the lapse of time had little practical effect on Brock's relationship to his backpack. . . . *Once the arrest process had begun*, the passage of time prior to the arrest did not render it any less a part of Brock's arrested person.

*Brock*, 184 Wn.2d at 159 (emphasis added).

Thus, *Brock* clarified that the arrestee need not be in actual, physical possession of the searched property at the time of the arrest for the search of the person rule to apply and established a test for determining whether an item was in an arrestee's actual possession immediately preceding the start of the arrest process. 184 Wn.2d at 159.

B.  TRIAL COURT'S REFUSAL TO DECIDE FACTUAL ISSUE, LAWFUL SEARCH INCIDENT TO ARREST

Heath argues that the trial court erred by refusing to decide the disputed factual issue of whether Heath "removed the backpack before or after the emergency lights were activated."  Br. of Appellant at 14-15 (quoting CP at 57).  We hold that the relevant inquiry here is not when the officer's lights were activated but whether the trial court's other findings, which are supported by Heath's own testimony, support the court's conclusion that the search of the backpack was a lawful search incident to arrest.  And we hold that the findings support the court's conclusion.

As the court stated in *Brock*, when evaluating whether the backpack was part of Heath's person, and therefore subject to search incident to arrest, "[t]he proper inquiry is whether possession so *immediately precedes* arrest that the item is still functionally a part of the arrestee's person."  184 Wn.2d at 158 (emphasis added).  Additionally, the court in *Brock* held that it is not the timing of possession in relation to the actual arrest that is important but that the relevant time is when the "arrest process" begins.  184 Wn.2d at 159.  As the court in *Brock* states, "[o]nce the *arrest process* had begun, the passage of time prior to the arrest did not render" the item "any less a part of [the defendant's] arrested person."  184 Wn.2d at 159.

Here, the trial court found that Heath removed her cigarettes from her backpack and put the backpack down and that she was in the process of lighting her cigarette when Corn approached her.  CP at 57 (FF VII).  This finding is supported by Heath's own testimony, so Corn's report was not necessary to make this finding.[6]  RP at 12.

---

[6] Heath testified that only 30 seconds passed from the time she took her backpack off until Corn walked up to her.

It is irrelevant when Heath saw the patrol car's lights or otherwise realized that Corn was stopping her. What is relevant is when Heath had the backpack in her possession in relation to the arrest. Although Heath had already put the backpack down when she observed the patrol car's lights and when Corn actually contacted her, Heath, by her own admission, had actual possession of the backpack when Corn observed her make the illegal turn while wearing the backpack and had set the backpack down mere seconds before Corn approached her on foot. Thus, Heath had actual possession of the backpack containing her personal items *immediately* before the arrest. And because Heath had been wearing the backpack and the backpack contained her personal items, such as her cigarettes, the backpack was "'in a fair sense a projection of h[er] person.'" *Byrd*, 178 Wn.2d at 623 (quoting *Rabinowitz*, 339 U.S. at 78 (Frankfurther, dissenting)). These facts support the trial court's conclusion that this was a valid search incident to arrest.[7]

---

[7] Heath has filed a statement of additional authorities citing to *State v. Alexander*, 10 Wn. App. 2d 682, 449 P.3d 1070 (2019), *review denied*, 458 P.3d 785 (2020), in support of her argument that constructive possession is not sufficient to justify a search incident to arrest. This case is not persuasive because, unlike here, no one had observed Alexander in actual possession of the backpack "at any earlier time." *Alexander*, 10 Wn. App. 2d at 692.

No. 52994-7-II

Because the trial court did not rely on Corn's report to support its conclusion that the search of the backpack was lawful and Heath's own testimony supports the trial court's decision, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, A.C.J.

SUTTON, A.C.J.

We concur:

MAXA, J.

GLASGOW, J.

11